IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HECTOR ROSARIO, et al.,

    Plaintiffs,

    v.                                          CIVIL NO. 06-1517 (RLA)

UNITED STATES OF AMERICA,
et al.,

    Defendants.

## ORDER IN THE MATTER OF DEFENDANTS' MOTION TO DISMISS

    Present before the court for disposition is defendants' Motion to Dismiss the Complaint. The court having reviewed the memoranda filed by the parties as well as the documents submitted therewith hereby rules as follows.

### I. PROCEDURAL BACKGROUND

    This action was instituted by 22[1] federal police officers who, at the time of the events alleged in the complaint, were carrying out police work for the Department of Veterans Affairs (DVA) at the San Juan Veterans Affairs Medical Center in Puerto Rico ("SJ-VAMC").

---

    [1] Named plaintiffs are: (1) Miguel Roman, (2) Edwin Castillo, (3) Antonio Falu, (4) Aladino Collazo, (5) Hector Rosario, (6) Erik Diaz, (7) Arthur Planadeball, (8) Alex Caseres, (9) Iraida Lebron, (10) Efrain Cruz, (11) Rafael Lopez, (12) Francisco Sanchez, (13) Enelida Gonzalez, (14) Angel R. Medina, (15) Edel Gil Gutierrez, (16) Marcos Giraud, (17) Benigno Carrion, (18) Jose Arroyo, (19) Rafael Alvira, (20) Gustavo Ayala, (21) Alberto Santiago and (22) Eddie Sanchez.

CIVIL NO. 06-1517 (RLA)                                          **Page 2**

Plaintiffs claim that defendants' surreptitious video surveillance of their locker-break room ran afoul of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680 as well as deprivation of their rights to "due process of law, equal protection of the laws and the pursuit of their life, liberty and profession."[2]

Named defendants are: the United States, the Secretary of the Department of Defense, the SJ-VAMC as well as seven federal officers and/or employees of the SJ-VAMC[3] both in their official and individual capacities. Plaintiffs voluntarily dismissed their claims against the Secretary of the U.S. Department of Defense.[4]

## II. MOTION TO DISMISS

In their Motion to Dismiss defendants argue that: (1) plaintiffs have no actionable claim under the Fourth Amendment to the United States Constitution; (2) there is no viable claim under the FTCA for violation of privacy rights under the Puerto Rico Constitution; (3) plaintiffs' claim for damages based on a hostile environment is not actionable under the FTCA and (4) the Secretary of Defense, the SJ-VAMC as well as the individual defendants are not proper party defendants under the FTCA.

---

[2]  Complaint ¶ 1.

[3]  These are: (1) Sylvia Valentin-Maldonado, (2) Roberto Alonso, (3) Merido Aponte, (4) Francisco de Jesus, (5) Jorge L. Cruz Sanchez, (6) Janet Diaz and (7) Dr. Rafael Ramirez-Gonzalez.

[4]  See Partial Judgment (docket No. 27).

CIVIL NO. 06-1517 (RLA)                                   **Page 3**

---

Upon examining the four arguments raised by defendants in their motion to dismiss, we must reach the conclusion that the first one, pertaining to the Fourth Amendment, disputes the legal validity of the illegal surveillance claim. The last three, on the other hand, address defenses under the FTCA which, in effect, challenge our subject matter jurisdiction.

In order to dispose of these issues, we must initially determine the applicable legal standard to our review.

### (A) Rule 12(b)(1) Standard - Jurisdiction

The court's authority to entertain a particular controversy is commonly referred to as subject matter jurisdiction. "In the absence of jurisdiction, a court is powerless to act.") <u>Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP</u>, 362 F.3d 136, 138 (1st Cir. 2004).

Federal courts are courts of limited jurisdiction and hence, have the duty to examine their own authority to preside over the cases assigned. "It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." <u>McCulloch v. Velez</u>, 364 F.3d 1, 5 (1st Cir. 2004). *See also*, <u>Am. Fiber</u>, 362 F.3d at 138 ("In the absence of jurisdiction, a court is powerless to act."); <u>Bonas v. Town of North Smithfield</u>, 265 F.3d 69, 73 (1st Cir. 2001) ("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case").

If jurisdiction is questioned, the party asserting it has the burden of proving a right to litigate in this forum. McCulloch v. Velez, 364 F.3d at 6. "Once challenged, the party invoking diversity jurisdiction must prove [it] by a preponderance of the evidence." Garcia Perez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004). *See also*, Manqual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) (party invoking federal jurisdiction has burden of establishing it).

Further, subject matter jurisdiction is not waivable or forfeited. Rather, it involves a court's power to hear a case, it may be raised at any time. Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004); United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). "The objection that a federal court lacks subject-matter jurisdiction... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y&H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

The proper vehicle for challenging the court's subject matter jurisdiction is Rule 12(b)(1), whereas challenges to the sufficiency of the complaint are examined under the strictures of Rule 12(b)(6). In disposing of motions to dismiss for lack of subject matter jurisdiction the court is not constrained to the allegations in the pleadings as with Rule 12(b)(6) petitions. Rather, the court may review extra-pleading material without transforming the petition into a summary judgment vehicle. Gonzalez v. United States, 284 F.3d 281,

CIVIL NO. 06-1517 (RLA)                                        **Page 5**

288 (1ˢᵗ Cir. 2002); <u>Aversa v. United States</u>, 99 F.3d 1200, 1210 (1ˢᵗ Cir. 1996).

Even though the court is not circumscribed to the allegations in the complaint in deciding a jurisdictional issue brought pursuant to Rule 12(b)(1) Fed. R. Civ. P. and that it may also take into consideration "extra-pleading material", 5A Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990) p. 213, "[w]here movant has challenged the factual allegations of the party invoking the district court's jurisdiction, the invoking party 'must submit affidavits and other relevant evidence to resolve the factual dispute regarding jurisdiction.'" <u>Johnson v. United States</u>, 47 F.Supp.2d 1075, 1077 (S.D.Ind. 1999) (citing <u>Kontos v. United States Dept. of Labor</u>, 826 F.2d 573, 576 (7ᵗʰ Cir. 1987)).

In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in the case.

<u>Aversa v. United States</u>, 99 F.3d at 1210-11 (citations omitted). *See also*, <u>Shrieve v. United States</u>, 16 F.Supp.2d 853, 855 (N.D. Ohio

1998) ("In ruling on such a motion, the district court may resolve factual issues when necessary to resolve its jurisdiction.")

### (B) Rule 12(b)(6) - Failure to State a Claim and Rule 56 - Summary Judgment

In disposing of motions to dismiss pursuant to Rule 12(b)(6) Fed. R. Civ. P. the court will accept all factual allegations as true and will make all reasonable inferences in plaintiff's favor. Campagna v. Mass. Dep't of Env't Prot., 334 F.3d 150, 154 (1st Cir. 2003); In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003); Frazier v. Fairhaven School Com., 276 F.3d 52, 56 (1st Cir. 2002); Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 92 (1st Cir. 2000).

Our scope of review under this provision is a narrow one. Dismissal will only be granted if after having taken all well-pleaded allegations in the complaint as true, the Court finds that plaintiff is not entitled to relief under any theory. Asoc. de Educacion Privada de P.R. v. Echevarria, 385 F.3d 81, 85 (1st Cir. 2004); Peña-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004); Campagna, 334 F.3d at 154; In re Colonial Mortgage, 324 F.3d at 15; Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995) cert. denied, 116 S.Ct. 1044 (1996); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). Further, our role is to examine the

complaint to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action.

When disposing of a motion to dismiss under Rule (12)(b)(6) the court may look at matters outside the pleadings which have been "fairly incorporated within it and matters susceptible to judicial notice" without converting it into a summary judgment petition. In re Colonial Mortgage, 324 F.3d at 15. In other words, in cases where "'a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" Perry v. New England Bus. Serv., Inc., 347 F.3d 343, 345 n.2 (citing Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).

However, pursuant to Rule 12(b), regardless of how the petition for dismissal is labeled, in the event that documents outside the pleadings are included with the request it may be deemed a summary judgment vehicle. Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4-5 (1st Cir. 1998); Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997); Vega-Rodriguez v. Puerto Rico Telephone Co., 110 F.3d 174, 177-78 (1st Cir. 1997).

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d

CIVIL NO. 06-1517 (RLA)                                              **Page 9**

409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Any testimony used in support of a motion for summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles. Rule 56(e) specifically mandates that affidavits submitted in conjunction with the summary judgment mechanism must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 16 (1st Cir. 2006); Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000). *See also*, Quiñones v. Buick, 436 F.3d 284, 290 (1st Cir. 2006) (affidavit inadmissible given plaintiff's failure to cite "supporting evidence to which he could testify in court"). "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998). In order to be admissible, the proffered statements must be specific and adequately "supported with particularized factual information." Perez v. Volvo Car Corp., 247 F.3d at 316. *See also*, Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) ("specific factual information based upon [affiant's] personal knowledge.")

CIVIL NO. 06-1517 (RLA)                                              **Page 10**

---

Further, Rule 56(e) itself provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted".

### (C) Standard in This Case

In this case, even though the dispositive motion under our consideration is entitled Motion to Dismiss and plaintiffs seek dismissal of some of the claims premised on the alleged lack of subject matter jurisdiction, i.e., Rule 12(b)(1), part of the arguments proffered by defendants are directed instead at the adequacy of plaintiffs' constitutional claim. Specifically, Part B of defendants' motion addresses defendants' position that plaintiffs have no viable cause of action under the Fourth Amendment.[5] Further, defendants submitted proposed uncontested facts as well as extrinsic evidence in support of this particular thesis.[6] Hence, in accordance with the provisions of Rule 12(b) this portion of the petition needs to be examined under the strictures of Rule 56 rather than Rule 12(b)(6).

Accordingly, we evaluate defendants' request for dismissal of the Fourth Amendment claims as one for summary judgment. Defendants' arguments regarding the FTCA, i.e., sovereign immunity, on the

---

[5]   Motion to Dismiss (docket No. 33) pp. 6-10.

[6]   Motion to Dismiss (docket No. 33) pp. 1-5.

other hand, shall be examined instead under the provisions of Rule 12(b)(1).

### III. FTCA - INDIVIDUAL DEFENDANTS

The United States, as a sovereign, is immune from suit unless it waives its immunity by consenting to be sued. *See*, <u>United States v. Mitchell</u>, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); <u>Barrett v. United States</u>, 462 F.3d 28, 36 (1st Cir. 2006) ("[t]he United States, as sovereign, cannot be sued absent an express waiver of its immunity"); <u>Day v. Mass. Air Nat'l Guard</u>, 167 F.3d 678, 681 (1st Cir. 1999) ("[a]s sovereign, the United States may not be sued for damages without its consent.")

Plaintiffs may not pursue a negligence cause of action against the individual defendants in this case. The United States is the only proper party defendant to a suit based on torts arising from the negligent acts or omissions of its employees when taken within the scope of their official duties. <u>McCloskey v. Mueller</u>, 446 F.3d 262, 266 (1st Cir. 2006). "The FTCA waives the sovereign immunity of the United States with respect to tort claims... and provides the exclusive remedy to compensate for a federal employee's tortious acts, committed within his or her scope of employment." <u>Roman v. Townsend</u>, 224 F.3d 24, 27 (1st Cir. 2000). Pursuant to 28 U.S.C. § 2679(b)(1), the remedies provided under the Federal Tort Claims Act

against the United States for negligent suits is exclusive and federal employees are immune from suits based on torts for acts taken within the scope of their employment.

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, amended the FTCA "to make an action against the United States the exclusive remedy for money damages for injury arising from the 'negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment,' 28 U.S.C. § 2679(b)(1) making federal employees absolutely immune from suit for torts committed within the scope of employment." Aversa, 99 F.3d at 1207. "The [Westfall] Act confers such immunity by making an FTCA action against the Government the exclusive remedy for torts committed by Government employees in the scope of their employment." United States v. Smith, 499 U.S. 160, 163, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

This individual immunity subsists even if government liability is otherwise foreclosed. Operation Rescue National v. United States, 147 F.3d 68, 69 (1st Cir. 1998). In other words, the FTCA provides "the exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability." United States v. Smith, 499 U.S. at 166. See also, Aversa, 99 F.3d at 1208 ("FTCA is the exclusive remedy even when... an exception to the FTCA precludes government liability.").

Federal government agencies are also shielded from liability by the FTCA. Pursuant to § 2679(a) "[t]he authority of any federal

agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under [the FTCA]".

Accordingly, any and all negligence claims asserted against the individual defendants in this case are hereby **DISMISSED.**

Further, because the United States is the sole proper party defendant under the FTCA all negligence claims asserted against the Secretary of the Department of Defense as well as the SJ-VAMC are also **DISMISSED.**

## IV. OFFICIAL AND INDIVIDUAL CAPACITY - BIVENS

Actions brought against federal government agents/employees in their "official" capacity are deemed suits against the United States which seek indemnification from the Government. "Relief in 'official capacity' suits, when granted, affects the defendant's office or position rather than his personal assets." Perez Olivo v. Gonzalez, 384 F.Supp.2d 536, 543 (D.P.R. 2005).

On the other hand, federal officials acting under color of federal law may be individually liable for constitutional torts similar to the liability of their state counterparts under 42 U.S.C. § 1983.[7] Bivens v. Six Unknown Named Agents of Fed. Bureau of

---

[7]   It must be noted that claims under 42 U.S.C. § 1983 are inapposite in this type of suit inasmuch as this provision applies exclusively "to persons acting 'under color of state law' and not to persons acting pursuant to federal law." Chatman v. Hernandez, 805 F.2d 453, 455 (1st Cir. 1986). See also, Rogers v. Vicuna, 264 F.3d 1, 4 (1st Cir. 2001) ("§ 1983 cannot form the basis of an action against individuals acting under color of federal law"); Roman v.

Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971);
Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1,
6 (1st Cir. 2005); Santoni v. Potter, 369 F.3d 594, 598 (1st Cir.
2004). "[T]he only way in which a suit for damages arising out of
constitutional violations attributable to federal action may be
brought is under the doctrine of *Bivens*". Tapia-Tapia v. Potter, 322
F.3d 742, 746 (1st Cir. 2003).

"The *Bivens* doctrine allows constitutional claims against
federal officials, in their individual capacities, for actions taken
under color of *federal* law. But the availability of that doctrine
does not override bedrock principles of sovereign immunity so as to
permit suits against the United States, its agencies, or federal
officers sued in their official capacities." McCloskey, 446 F.3d at
271-72 (italics in original, internal citations omitted). Tapia-
Tapia, 322 F.3d at 745 (sovereign immunity bars claims against
federal defendants in official capacity; only *Bivens* available for
constitutional violations). "[T]he government's sovereign immunity
does not vanish simply because government officials may be personally
liable for unconstitutional acts." Tapia-Tapia, 322 F.3d at 746.

"*Bivens* suits can only be brought against federal officers in
their individual capacities." Id. at 746. "It is well settled that a
*Bivens* action will not lie against an agency of the federal

Townsend, 224 F.3d at 26 n.2 ("[t]he district court correctly
construed plaintiffs' § 1983 claim as a *Bivens* claim because the
defendants were federal, not state, agents.")

government. The same holds true as to federal officials sued in their official capacities. A *Bivens* action only may be brought against federal officials in their individual capacities. Even then, the plaintiff must state a claim for direct rather than vicarious liability; respondeat superior is not a viable theory of *Bivens*." Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) (internal citations omitted).

> There is no such animal as a Bivens suit against a public official tortfeasor in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a Untied States agent operates as a claim against the United States. Because a Bivens claim may not be brought directly against the United States as such, an official capacity Bivens suit would be an oxymoron.

Perez Olivo, 384 F.Supp.2d at 543 (internal citations and quotation marks omitted).

Lastly, similar to sec. 1983 suits, *Bivens* claims are subject to the one-year limitations period applicable to personal injury torts as provided for in P.R. Laws Ann. tit. 31, § 5298(2) (1991). *See*, Gonzalez Rucci v. U.S. I.N.S., 405 F.3d 45, 48 (1st Cir. 2005); Roman v. Townsend, 224 F.3d 24, 29 (1st Cir. 2000); Pitts v. United States, 109 F.3d 832, 834 (1st Cir. 1997).

Thus, unless specifically waived, sovereign immunity bars suits brought against those employed by United States in their official

capacity. Apart from the FTCA - which is strictly limited to the United States as sole defendant - no other grounds for government liability appear in the complaint. Accordingly, plaintiffs are precluded in this case from asserting claims against the named defendants in their official capacity and any such claims are hereby **DISMISSED.**

All that remains for the court to ascertain is whether or not plaintiffs have adequately pled a viable constitutional violation against the individual defendants in their personal capacity. In other words, plaintiffs' sole remedy for their Fourth Amendment claims may only be prosecuted against the individual defendants under *Bivens*.

### V. FTCA - PRIVACY CLAIM UNDER PUERTO RICO CONSTITUTION

As part of the FTCA's jurisdictional requirements, sec. 1346(b) limits liability to those situations in which "a private person would be liable... in accordance with the law of the place where the act or omission took place." The events leading to this litigation took place in Puerto Rico. Thus, plaintiffs must identify the legal basis for a private party to be liable in this forum based on the charged acts or omissions. In this vein, it is important to note that liability is limited to the acts or omissions of a private party in like circumstances.

The search for analogous state-law liability is circumscribed by the explicit language of the FTCA, which

restricts that search to *private* liability. In other words, we must look to some relationship between the governmental employee and the plaintiff to which state law would attach a duty of care in purely private circumstances.

The flip side of this coin is that we are not at liberty to derive analogues from instances in which state law enforcement officers - and only state law enforcement officers - would be liable under state law. In the FTCA milieu, the federal government does not yield its immunity with respect to obligations that are peculiar to governments or official-capacity state actors and which have no private counterpart in state law.

McCloskey, 446 F.3d at 267 (italics in original, internal citations, brackets and quotation marks omitted).

In sum, it is plaintiffs' burden to show that under Puerto Rico law a private employer who carried out surreptitious video surveillance of its employees may be liable under tort principles.

In discussing FTCA liability in their Response in Opposition to Defendants' Motion to Dismiss (docket No. 36), plaintiffs indistinctly refer to rights protected under the U.S. Constitution and those protected under the P.R. Constitution.[8] However, because of

---

[8]  See *i.e.*, Part IV entitled "Plaintiffs' Claim for Damages for the violation of the Fourth and Fifth Amendment of the **United States** Constitution is Actionable under the FTCA" at p.9; "right of privacy... under the Constitution of the **Commonwealth of Puerto Rico** thus liable under the Federal Tort Claim[s] Act" at p.10, and "the

the inherent legal implications under each one of them regarding the proper party defendant to this litigation, i.e., United States under the FTCA or individual liability of the named defendants, it is crucial to distinguish claims between the two constitutional domains.

The Puerto Rico Supreme Court has specifically held that the constitutional rights to dignity and privacy as they appear in art. II secs. 1 and 8 of the Bill of Rights of the Puerto Rico Constitution operate *ex proprio vigore* and therefore, may be asserted against private parties via a claim sounding in tort pursuant to the provisions of art. 1802 of the P.R. Civil Code, P.R. Laws Ann. tit. 31 § 5141 (1990) Vega-Rodriguez v. Telefonica de P.R., 156 D.P.R. 586, 600 (2002); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178, 2002 (1998); Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 64 (1986).

In other words, due to their peculiar nature by way of exception, private parties are liable for violations to dignity and privacy protections of their employees under our local Constitution. The Puerto Rico Supreme Court distinguished coverage under these particular constitutional rights which operate *ex proprio vigore* from those that do require "state action" such as due process, freedom of speech and protection against unreasonable searches and seizures which mandate government intervention. Hence, these last provisions

claim brought... is based on violation of the Fourth and Fifth Amendments of the **United States** Constitution" at p.10 (emphasis ours).

are not available vis à vis private parties and may only be asserted against government entities. <u>Vega-Rodriguez</u>, 156 D.P.R. at 613.[9]

That being the case, claims for violations to dignity and privacy protections of employees brought under the Puerto Rico Constitution translate into suits amenable to FTCA liability. Based on the foregoing, this particular cause of action may only be asserted against the United States under the FTCA. No such claim may be brought against either the individual defendants or government entities.

Accordingly, claims for alleged violations to dignity and privacy protections under the Puerto Rico Constitution asserted against the Secretary of Defense, the SJ-VAMC and the individual defendants are hereby **DISMISSED.** These claims shall proceed exclusively against the United States pursuant to the FTCA.

## VI. FTCA - HOSTILE WORK ENVIRONMENT CLAIM

Defendants contend that there is no actionable hostile environment claim under the FTCA. Plaintiffs counter by arguing that they are not asserting a separate cause of action for hostile environment but rather this phrase describes the damages ensued as a

---

[9] It is important to note that two parallel suits were filed by employees affected by surveillance of their work facilities at the Puerto Rico Telephone Company - one in federal court seeking relief under federal constitutional provisions - <u>Vega-Rodriguez v. Puerto Rico Telephone Co.</u>, 110 F.3d 174 (1st Cir. 1997) - the other in state court based on state constitutional and statutory provisions <u>Vega-Rodriguez v. Telefonica de P.R.</u>, 156 D.P.R. 586 (2002). Hence, each of these suits examined the legal consequences of the same events under the two separate legal schemes.

**CIVIL NO. 06-1517 (RLA)**                                       **Page 20**

result of the secret videotaping. Based on these representations, this argument has been rendered **MOOT**.

**VII. FOURTH AMENDMENT**

In order to adequately dispose of plaintiffs' constitutional challenge to the video surveillance we must initially address the general principles surrounding the rights implicated under the facts asserted in this case.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures". U.S. Const. amend. IV.

In order to ascertain whether or not a breach of the Fourth Amendment has been effected, the court must initially determine whether defendants "infringed an expectation of privacy that society is prepared to consider reasonable." O'Connor v. Ortega, 480 U.S. 709, 715, 107 U.S. 1492, 94 L.Ed.2d 714 (1987) (citation and internal quotation marks omitted).

"[A] privacy expectation must meet both subjective and objective criteria: the complainant must have the actual expectation of privacy, and that expectation must be one which society recognizes as reasonable." Vega-Rodriguez, 110 F.3d at 178. In other words, "[a] valid fourth amendment claim requires a subjective expectation of privacy that is objectively reasonable." United States v. Taketa, 923 F.2d 665, 670 (9th Cir. 1991).

"One has a subjective expectation of privacy if one has taken efforts to preserve something as private." Trujillo v. City of Ontario, 428 F.Supp.2d 1094, 1102 (C.D.Cal. 2006). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." O'Connor, 480 U.S. at 718 (citation, internal quotation marks and brackets omitted). "The Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Trujillo, 428 F.Supp.2d at 1102 (citations omitted).

The Fourth Amendment protects from undue government intrusion[10] both in civil and criminal settings.[11] Fourth Amendment "safeguards individuals not only against the government *qua* law enforcer but also *qua* employer." Vega-Rodriguez, 110 F.3d at 179.

---

[10]  It is axiomatic that the U.S. Constitution protects only against government action. Hence, the Fourth Amendment's protective shield extends solely to public, not private employees, in their work environment. *See*, Vega-Rodriguez, 110 F.3d at 178 (internal citations omitted) (defendant quasi-public corporation "is... a government actor subject to the suasion of the Fourth Amendment".)

[11] It is important to note that government work-related searches for employee misconduct are governed by the "reasonableness" standard not by the probable cause requirement. "A search by a public employer for non investigatory, work-related purposes and for investigations of work-related misconduct, however, are judged by a reasonable cause, not a probable cause, standard." Trujillo, 428 F.Supp.2d at 1108.

However, "not everything that passes through the confines of the business address can be considered part of the workplace context". O'Connor, 480 U.S. at 716. "Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." *Id*. at 717. "Searches and seizures by government employers or supervisors of the private property of their employees, therefore, are subject to the restraints of the Fourth Amendment." *Id.* at 715.

The Fourth Amendment's cloak extends solely to those work areas where employees have a "reasonable expectation of privacy." O'Connor, 480 U.S. at 716. This determination is fact intensive and must be made after careful examination of the circumstances extant in the particular scenario under consideration. "Intrusions upon personal privacy do not invariably implicate the Fourth Amendment. Rather, such intrusions cross the constitutional line only if the challenged conduct infringes upon some reasonable expectation of privacy." Vega-Rodriguez, 110 F.3d at 178.

"In the last analysis, the objective component of an employee's professed expectation of privacy must be assessed in the full context of the particular employment relation." *Id*. at 179. "Whether an employee has an objectively reasonable expectation of privacy in the workplace is determined on a case-by-case basis." Williams v. City of Tulsa, Okla., 393 F.Supp.2d 1124, 1129 (N.D. Okla. 2005). "Given the great variety of work environments in the public sector, the question

of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis. O'Connor, 480 U.S. at 718.

"[I]t is necessary to examine all of the circumstances of the working environment and the relevant search" in order to determine whether the employee's privacy expectation in a particular location is reasonable. Williams, 393 F.Supp.2d at 1129 (citation and internal quotation marks omitted).

> Because the reasonableness of an expectation of privacy, as well as the appropriate standard for a search, is understood to differ according to context, it is essential first to delineate the boundaries of the workplace context. The workplace includes those areas and items that are related to work and are generally within the employer's control. At a hospital, for example, the hallways, cafeteria, offices, desks, and file cabinets, among other areas, are all part of the work-place. These areas remain part of the workplace context even if the employee has placed personal items in them....

O'Connor, 480 U.S. at 715-16.

There is no "routinized checklist... capable of being applied across the board and each case therefore must be judged according to its own scenario." Vega-Rodriguez, 110 F.3d at 178.

"Although there is no "talisman" that determines whether society will find a person's expectation of privacy reasonable, a court may

consider (1) the nature of the search, (2) where the search takes place, (3) the person's use of the place, (4) our societal understanding that certain places deserve more protections than others, and (5) the severity of the search." Trujillo, 428 F.Supp.2d at 1103.

"The employee's expectation of privacy must be assessed in the context of the employment relations. An office is seldom a private enclave free from entry by supervisors, other employees, and business and personal invitees. Instead, in many cases offices are continually entered by fellow employees and other visitors during the workday... for... work-related visits. Simply put, it is the nature of government offices that others - such as fellow employees, supervisors, consensual visitors, and the general public - may have frequent access to an individual's office." O'Connor, 480 U.S. at 717. "[S]ome government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable." Id. at 718.

"That plaintiffs chose to perform these activities in an area specifically designed to protect their privacy instead of a public area establishes that they had taken measures to preserve these activities as private." Trujillo, 428 F.Supp.2d at 1102. "Whether an employee has an objectively reasonable expectation of privacy is an easier question where an area is not enclosed, where the activities can be easily observed, and where other personnel have easy access to the area." Williams, 393 F.Supp.2d at 1129-30.

**CIVIL NO. 06-1517 (RLA)**                                      **Page 25**

Video surveillance in an employment setting may be regarded as an unconstitutional search under the Fourth Amendment provided plaintiff has a "reasonable expectation of privacy" in area subject to view. However, the Fourth Amendment does not impose additional special restrictions for reviewing the constitutionality of video surveillance. "It is true... that human observation is less implacable than video surveillance. But we find no principled basis for assigning constitutional significance to that deprivation. Both methods - human observation and video surveillance - perform the same function. Thus, videotaping per se does not alter the constitutional perspective in any material way. <u>Vega-Rodriguez</u>, 110 F.3d at 181 n.6. "[N]o legitimate expectation of privacy exists in objects exposed to plain view as long as the viewer's presence at the vantage point is lawful. And the mere fact that the observation is accomplished by a video camera rather than the naked eye, and recorded on film rather than in a supervisor's memory does not transmogrify a constitutionally innocent act into a constitutionally forbidden one." *Id.* at 181 (internal citations omitted).

In <u>Trujillo</u>, 428 F.Supp.2d at 1104, the court ruled that despite the communal nature of the locker room and the fact that plaintiffs were subject to minimal intrusions it did "not diminish the reasonableness of a person's expectation to be free from covert video surveillance." "Plaintiffs need not have an expectation of total privacy in order to have a reasonable expectation they will not be

recorded surreptitiously while changing clothes in a locker room. Privacy does not require solitude. Access of others does not defeat people's expectation of privacy... [T]his diminished privacy interest does not eliminate society's expectation to be protected from the severe intrusion of having the government monitor private activities through hidden video cameras." *Id.* at 1104-1105 (internal citations, brackets and quotation marks omitted). *See also*, Taketa, 923 F.2d at 673 ("Privacy does not require solitude.")

### (A) Expectation of Privacy

Defendants argue that plaintiffs had prior notice of the possibility of cameras being installed in the locker-break room by virtue of the VA Handbook as well as the Master Agreement with plaintiffs' Union.

"Public employees' expectations of privacy... may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." O'Connor, 480 U.S. at 717. "A person may have a privacy interest in his office, not just in his personal effects, if he meets the... test of a subjective expectation of privacy that is objectively reasonable. This first part of the test has special relevance in the employment context, as a valid regulation may defeat an otherwise reasonable expectation of workplace privacy." Taketa, 923 F.2d at 672 (internal citations omitted).

However, contrary to Vega-Rodriguez, where specific notice was given regarding the cameras that were indeed installed, the documents

provided by defendants in support of their argument do not have this effect. In <u>Vega-Rodriguez</u>, 110 F.3d at 180 the court noted that the "employer acted overtly in establishing the video surveillance: PRTC notified its work force in advance that video cameras would be installed and disclosed the cameras' field of vision. Hence, the affected workers were on clear notice from the outset that any movements they might make and any objects they might display within the work area would be exposed to the employer's sight." (footnote omitted).

The VA Handbook 0730 merely restates the Fourth Amendment standard. It reads:

> j. **Search of Employee Workplaces.** The authority to search Government furnished and assigned personal lockers and office desks without a warrant will depend on whether the employer retains the right to inspect these areas and the employee's reasonable expectation of privacy.

Further, art. 47 of the VA's Master Agreement with plaintiffs' Union simply states that surveillance might be conducted "for safety and security reasons."

A surveillance camera was installed in the VA Police Service's locker-break room which houses the lockers assigned to each police officer to store their official equipment. These lockers are not full-size lockers intended to store garments. Rather, they are half-sized lockers intended for storing official equipment such as: belts,

flashlights, handcuffs, etc. at the end of each police officer's tour of duty since this equipment cannot be taken home.

Within the locker-break room there is a bathroom with its own door as well as an "evidence room" which is a small enclosed space used to hold evidence taken from detainees. This bathroom can also be used by persons in the "holding cell" nearby.

The area serves as a multi-purpose room by both female and male personnel to eat, reheat food or store their equipment in the lockers, enter the bathroom or gain access to the evidence room. It contains a table with four chairs which the employees use to eat quick meals as well as a refrigerator and a telephone but no radio or television nor a sofa or couch.

The locker-break room is intended for the use of all of the employees under the Police Service. Employees from other services in the SJ-VAMC are not authorized to use this room. Hence, the room has a sign advising that it is for the use of "authorized employees only". The locker-break room is not sound proof and conversations held therein can be heard in the hallway.

Defendants contend that there is no reasonable privacy expectancy under the circumstances present in this case. However, despite defendants' proffer, we find that there is sufficient indicia in the record that the locker-break room was intended to be used by a limited group of people for activities intended to be carried out outside the presence of the general public to meet both the

subjective and objective requirements under the Fourth Amendment. The purpose of the room was inherently private. It was designated for a particular category of employees to safeguard their personal belongings and working instruments as well as to eat snacks.

Defendants argue that because the area was used by a large number of staff and persons kept in the holding cell would use the bathroom this rendered it unsuitable for privacy concerns. However, defendants do concede that some employees would use the room to put on their uniform shirts, uniform belts and gear.[12] According to plaintiffs' union representative, "[t]he female and males use this opportunity to fix their pants and tuck their shirts inside."[13] Further, observations of the April 24, 2004 tape made by Pedro J. Rosado-Gomez for 12:12 indicate that a "P.O. appears, dropped his pants to put shirt up; P.O. puts shirt on and leaves the area".[14]

Further, plaintiffs submitted the Sworn Statement of plaintiff Antonio Falu Santos, a DVA Police Officer, who indicated that: "VA Officers use the room to have private conversations including discussing cases in which [they are] involve[d];[15] some of the VA Officers "closed the doors and change[d] [their] clothes" upon

---

[12] Motion to Dismiss (docket No. 33) ¶ 15 pp. 4-5.

[13] Memorandum from Richard Camacho to Dr. Rafael E. Ramirez dated May 24, 2004 (docket No. 33) Exh. 3.

[14] Motion to Dismiss (docket No. 33) Exh. 7 p. 47.

[15] Sworn Statement (docket No. 44) ¶ 4.

arrival and prior to leaving work;[16] and they used the "room to eat privately or to rest" during their lunch break."[17] Affiant further noted that the area was private "since we write and store evidence and private reports that are private [pursuant to] HIPAA and Veterans Privacy Act when we intervened with plaintiffs."[18]

"[T]he conduct in a locker room is inherently more private than that which takes place in a shared or private office." Trujillo, 428 F.Supp.2d at 1105. "Plaintiffs need not have an expectation of total privacy in order to have a reasonable expectation they will not be recorded surreptitiously while changing clothes in a locker room. Privacy does not require solitude. Access of others does not defeat people's expectation of privacy... [T]his diminished privacy interest does not eliminate society's expectation to be protected from the severe intrusion of having the government monitor private activities through hidden video cameras." Id. at 1104-1105 (internal citations, brackets and quotation marks omitted). See also, Taketa, 923 F.2d at 673 ("Privacy does not require solitude.")

Thus, the fact that plaintiffs may have been seen by co-workers present at the time in a locker-break room setting does not automatically dispel their expectation of privacy view by third parties via a hidden camera.

---

[16] Sworn Statement (docket No. 44) ¶ 5.

[17] Sworn Statement (docket No. 44) ¶ 6.

[18] Sworn Statement (docket No. 44) ¶ 7.

Based on these circumstances, with the evidence currently in record no reasonable jury could find that plaintiffs did not have a reasonable expectation of being free from covert video surveillance while in the locker-break room.

### (B) Reasonableness of Search

However, it is not enough for plaintiffs to establish the reasonableness of their expectation of privacy. Given the underlying purpose of the Fourth Amendment, i.e., protect against unreasonable searches, in addition to asserting that the privacy expectations are indeed reasonable, plaintiffs must also prove that the employer's search was in fact unreasonable.

"The nature of the intrusion can affect whether a person has a reasonable expectation of privacy; while a person may not have such an expectation from one type of search, he or she objectively may expect privacy with respect to another." Trujillo, 428 F.Supp.2d at 1103.

"The precise extent of an employee's expectation of privacy often turns on the nature of an intended intrusion. In this instance the nature of the intrusion strengthens the conclusion that no reasonable expectation of privacy attends the work area. Employers possess a legitimate interest in the efficient operation of the workplace and one attribute of this interest is that supervisors may monitor at will that which is in plain view within an open work area." Vega-Rodriguez, 110 F.3d at 180 (internal citations omitted).

In setting forth the applicable analysis for determining the standard of reasonableness of searches in the workplace the Supreme Court noted the need to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion... In the case of searches conducted by a public employer, we must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace." O'Connor, 480 U.S. at 719-20 (internal citations and quotation marks omitted).

"To determine the reasonableness of a search requires balancing the nature of the quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government interests alleged to justify the intrusion." Trujillo, 428 F.Supp.2d at 1108 (internal citations, brackets and quotation marks omitted).

"[P]ublic employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances. Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable." O'Connor, 480 U.S. at 725-26.

CIVIL NO. 06-1517 (RLA)                                          **Page 33**

Even though defendants argue that the surveillance video camera was installed to address problems relative to "a rash of complaints lodged by female police officers alleging sexual orientation discrimination, sexual harassment, defamation and hostile work environment",[19] only evidence specifically pertaining to the allegations of P.O. Raquel Rosario as well as defendants' responses thereto were filed together with defendants' motion. Accordingly, we shall disregard counsel's arguments relative to other complaints and other Boards of Investigation.

According to the evidence submitted, a complaint was lodged by female P.O. Raquel Rosario accusing a fellow police officer of sexual harassment. She also alleged defamation, alleging that his unwanted attentions and behavior were creating a hostile work environment. Ms. Rosario addressed her written complaint to the Acting Operation supervisor, Lt. Roberto Alonso, who then forwarded the complaint to the Police Chief.

A Board of Investigation was convened by the SJ-VAMC Director to address Ms. Rosario's complaint. A Report was issued on August 27, 2003, which concluded that P.O. Rosario was the object of unwelcome advances by a fellow police officer but no evidence was found to characterize the officer's behavior as sexual harassment. However, the Board did find evidence of a hostile work environment and that management failed to properly address the situation. The Board

_____

[19]   Motion to Dismiss (docket No. 33) p.9.

**CIVIL NO. 06-1517 (RLA)**                                           **Page 34**

recommended that management take action to improve the work environment, including training and instructing supervisors about sexual harassment.

On March 3, 2004, P.O. Raquel Rosario filed another complaint alleging she was being harassed by someone who was placing notes in her locker implying that she could be subjected to disciplinary action for bringing a false accusation of sexual harassment against a fellow police officer. The Police Chief then decided that a surveillance camera should be installed in the Police Service locker-break room.

A hollow was made in the ceiling and the camera was focused on Raquel Rosario's locker. It was a video camera with a small fixed lens in the middle, no audio, and a base to affix it to the surface. The camera recorded continuously, not in segments, and the image was transmitted from the camera to a video cassette. The camera recorded live but the number of hours it recorded depended on the length of the video cassette tape used.

The camera was installed in the locker-break room on or about the first week of April 2004 by Detective Merido Aponte. On May 2, 2004, the camera was discovered by Sgt. Hector Rosario. It was taken down the following day. No disciplinary or other administrative actions were taken based on these tapes because no harassment or other disciplinary violations were recorded.

In judging the reasonableness of the employer's conduct the court must examine whether or not it was warranted due to the extant circumstances and if so, whether its reach was sufficiently limited to deal with the particular situation it sought to address. "Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." O'Connor, 480 U.S. at 726 (internal citations and quotation marks omitted).

Defendants base their need for conducting covert surveillance in this case on their interest in eradicating sexual harassment and discrimination in the employment setting. Further, they argue that previous steps to correct the problem had proven ineffective in correcting the situation.

It is axiomatic that sexual harassment and discrimination negatively affect the working environment. However, apart from the fact that the documents submitted in this case pertain just to one particular alleged victim - as opposed to the "rash of complaints by female police officers" referred to by defendants - there is no evidence in the record indicative that any of the alleged sexual discriminatory conduct took place in the locker-break room. In other words, there does not seem to be a logical connection between the

conduct sought to be curtailed and the preventive measures taken. All we have before us is reference to the two anonymous notes whose content in no way manifest an impending danger situation.

Accordingly, faced with the limited information currently available to the court it cannot be reasonably concluded that defendants had a valid reason to have covert cameras installed in the locker-break room. In other words, even though defendants have a legitimate interest in eradicating sexual discrimination in the workplace there is not sufficient evidence in the record at this time to warrant encroachment into plaintiffs' privacy interests via surveillance video.

Accordingly, defendants' request to dismiss the Fourth Amendment claim is hereby **DENIED.**

### VIII. CONCLUSION

Based on the foregoing, defendants' Motion to Dismiss (docket No. **33**)[20] is disposed of as follows:

- Any and all negligence claims asserted against the Secretary of the Department of Defense, the SJ-VAMC and the individual defendants are hereby **DISMISSED;**

- Any and all claims asserted against defendants in their official capacity are hereby **DISMISSED;**

---

[20] See, Response in Opposition (docket No. **36**), Reply (docket No. **39**) and Surreply (docket No. **42**).

**CIVIL NO. 06-1517 (RLA)**                                    **Page 37**

-    Any and all privacy claims under the Puerto Rico
     Constitution asserted against the Secretary of the
     Department of Defense, the SJ-VAMC and the individual
     defendants are hereby **DISMISSED;**

-    The request to dismiss the hostile environment claim is
     declared **MOOT,** and

-    Defendants' request to dismiss the Fourth Amendment claim
     is **DENIED.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 19th day of March, 2008.


                              S/Raymond L. Acosta
                           RAYMOND L. ACOSTA
                        United States District Judge